C. C. REID and Others v. NORTHWESTERN IMPLEMENT & WAGON COMPANY.

May 7, 1900.

Nos. 11,939—(71).

**Offer to Purchase on Condition—Acceptance.**

A written order, addressed to a party, and directing a shipment of goods, such order being "subject to approval at your office," is nothing more than a conditional offer to purchase. To become a valid enforceable contract, it must be approved or accepted by the party to whom it is addressed, and the party signing the same must be notified of the approval or acceptance within a reasonable time.

**Evidence of Acceptance Insufficient.**

In the case at bar there was no formal approval or acceptance of the order. *Held*, that certain acts on the part of the officers of the corpora-

79 M.—24

tion to whom the order was addressed, and a conversation with one of the officers, were insufficient to show approval or acceptance.

Action in the district court for Hennepin county to recover $2,700, and interest, damages for breach of contract. The case was tried before Harrison, J., who, at the close of plaintiffs' testimony, granted defendant's motion to dismiss the action. From an order denying a motion for a new trial, plaintiffs appealed. Affirmed.

*F. D. Larrabee*, for appellants.

*Wilbur F. Booth*, for respondent.

COLLINS, J.

For one reason, at least, the plaintiffs could not recover in this action, and therefore the court below was fully justified in dismissing the cause when plaintiffs rested. The written order addressed to defendant corporation, signed by two of the plaintiffs, and delivered to defendant's traveling salesman, contained the following plain language:

"Please ship us on July 1, 1898, or as soon thereafter as possible, the following order, subject to approval at your office."

This order was for 45,000 pounds of binding twine, four distinct grades being specified, at prices ranging from 5½ to 7 cents per pound, the value aggregating over $2,700. This writing was merely a conditional offer to purchase the twine at the prices named if the proposition was satisfactory to defendant, and was approved or accepted by it at its office, and this approval or acceptance communicated to plaintiffs within a reasonable time. To constitute a valid contract of sale, it is always essential that the parties mutually assent to its terms. An offer to sell or to buy does not become a contract until it is approved or accepted unconditionally, and upon its exact terms, by the other party. Ames & Frost Co. v. Smith, 65 Minn. 304, 67 N. W. 999, and cases cited; Leake, Cont. c. 1, § 1, par. 2. And in this case, approval or acceptance at defendant's office, not by its salesman, was expressly made a condition of the order; and, until such approval or acceptance, there was no contract.

But counsel for plaintiffs contends that by certain acts of its officers the defendant approved and accepted the order, and became bound to ship the twine. Putting aside all question of the necessity, under the statute of frauds, of an approval or acceptance by defendant in writing, it is obvious that the acts relied on were wholly insufficient, and fall far short of establishing what is claimed for them. When the order was sent by the salesman who received it, the defendant mailed a letter to the firm, of which the two plaintiffs who signed were members, inclosing an acknowledgment that the other plaintiff, who had not signed, was one of the firm, and a guaranty on his part that all "contracts" made by his associates on that particular day should be faithfully performed. This paper was signed by the plaintiff last referred to, and then sent to defendant. What were the contents of the letter from defendant was not shown. Soon afterwards copies of the order and the acknowledgment and guaranty were forwarded by defendant to plaintiff firm, the originals being retained. This is one of the acts relied on. In May plaintiffs wrote to defendant, asking for prompt shipment of the twine, but the defendant, in an immediate reply, very clearly indicated that it had not approved or accepted the order, and did not intend to. Fifteen days later plaintiffs again inquired by mail as to defendant's intentions, but there seems to have been no answer to this communication.

The plaintiffs cannot and do not depend on these letters, but do contend that in a certain conversation between two of the plaintiffs and defendant's president the written order was approved and accepted. According to plaintiffs' testimony, defendant's president said, when asked about delivering the twine, that

He "had ten thousand pounds of his own that he would give us; that is all he had, but he knew where there was ten or twelve thousand more, and he would get it, and send it, and, if he could get the rest of the twenty-five thousand, he would get that, and send it."

If this proved anything at all, it was that defendant's president refused to recognize the order, or to ship any twine in accordance with its terms, and this was made evident later on, when it appeared from the testimony that cash was to be paid for whatever

was sent, while under the original order plaintiffs were to have time for payment until November 1. And, again, this conversation related to twenty-five thousand pounds only, while the order was for nearly twice that amount. Retaining the order, securing the assent of the third member of the firm to it, and then forwarding copies to plaintiffs, together with the conversation, cannot be held an approval or acceptance. Langellier v. Schaefer, 36 Minn. 361, 31 N. W. 690; Stensgaard v. Smith, 43 Minn. 11, 44 N. W. 669; Olson v. Sharpless, 53 Minn. 91, 55 N. W. 125; Ames & Frost Co. v. Smith, supra; Thompson v. Perkins, 97 Iowa, 607, 66 N. W. 874. The conditional offer in writing was expressly subject to the approval of the defendant company, and until there was such approval, or an acceptance which was equivalent to approval, there was no contract, and neither party was bound. The evidence failed to show approval or acceptance, verbal or otherwise, and plaintiffs could not recover damages for alleged breach.

Order affirmed.