## W. A. SHAKE AND ANOTHER v. WESTCHESTER FIRE INSURANCE COMPANY OF NEW YORK.[1]

January 18, 1924.

No. 23,656.

**Modification of terms of insurance policy and consent of insured.**

Subject to the statutory law of this state, a policy of insurance is within the application of the general principles of the law of contracts. The insurer has the burden of proving consent by the insured to a modification of the terms of the policy. Accepting and attaching a rider to the policy is proof of consent to the modification of the contract shown by the rider, but the circumstances mentioned in the opinion warranted the court in finding that in fact such consent was lacking.

Action in the district court for Pipestone county by the partners doing business as the Toggery to recover $2,065.35 upon two insurance policies. The case was tried before Nelson, J., who made findings and ordered judgment in favor of plaintiffs for the amount demanded. From an order denying its motion for a new trial, defendant appealed. Affirmed.

*James H. Hall,* for appellant.
*M. J. Meeker,* for respondents.

[1]Reported in 196 N. W. 804.

LEES, C.

This is an action on two policies of fire insurance issued to plaintiffs by defendant, the first in July and the second in September, 1921. The action was defended on the ground that a portion of plaintiffs' claim was for the loss of clothing left with them by their customers to be renovated. The policies were written by W. L. Alexander, defendant's local agent at Pipestone, were in the standard form, and, as first written, had riders attached with a clause in one reading as follows: "Item 4—$500 on Ladies' and gentlemen's suits, new and those that have been left for repairs, etc," and in the other the same except as to the amount of insurance, which was $900. On December 6, 1921, R. L. Woodman, acting for Mr. Alexander, called upon the plaintiffs, procured the policies, detached the riders and gave plaintiffs two new ones. As to Item 4, both riders, after specifying the amount, read: "On ladies' and gentlemen's suits, the property of the assured."

Plaintiffs took the riders and attached them to the policies. The fire occurred on March 9, 1922. The total loss was $2,871.35, of which $806 was apportioned to another insurer. The remainder was made up of a loss of $1,263.62 on customers' goods and $801.73 on goods owned by plaintiffs. Defendant denied liability for the first of these items of loss.

The court found that plaintiffs at no time consented to any change in the terms or conditions of the policies and that none was ever effected, and ordered judgment in their favor for $2,065.35 with interest. Defendant has appealed from an order denying its motion for a new trial, attacking the finding above mentioned on the ground that it is not supported by the evidence.

The plaintiff Shake testified that the new riders were left with him by Mr. Woodman without an explanation as to their contents; that he asked him if the insurance was all right and he said it was; and that plaintiffs never received notice of any modification or change in the policies. Mr. Woodman testified that he received instructions from the company to attach the new riders to the policies, informed Mr. Shake of that fact, and that he had no recollection of

any other conversation with him. Defendant does not deny that its agent Alexander intended, when he wrote the policies, to cover wearing apparel left with plaintiffs by their patrons. Neither does it deny that, as first written, the policies covered wearing apparel not owned by plaintiffs, or that they had an insurable interest therein. See Banner Laundry Co. v. Great Eastern Casualty Co. 148 Minn. 29, 180 N. W. 997; 26 C. J. p. 25.

The only question for determination by the trial court was whether the evidence showed that the original contracts of insurance had been modified. General rules applicable in the consideration of a question of that character are set forth in Northwestern F. & M. Ins. Co. v. Conn. Fire Ins. Co. 105 Minn. 483, 117 N. W. 825. Plaintiffs assert that they never assented to a change in the terms of the original contracts and did not know of defendant's attempt to modify them. There was no evidence to show that plaintiffs expressly assented to any modification. Defendant takes the position that after plaintiffs attached the riders to the policies they could not be heard to say that they were not part of the policies or that the original contracts had not been changed. Its position is supported by Parsons, Rich & Co. v. Lane, 97 Minn. 98, 106 N. W. 485, 4 L. R. A. (N. S.) 231, 17 Ann. Cas. 1144, a case where there was no written application for insurance and no oral agreement as to the terms of the policy, and this court ruled that by accepting and retaining the policy the insured was charged with notice of its contents.

Subject to the statutory law of this state, a policy of insurance is within the application of the general principles of the law of contracts. Kollitz v. Equit. Mut. Fire Ins. Co. 92 Minn. 234, 99 N. W. 892. Mutual consent of the parties is always essential to a modification of a contract and it is incumbent upon the party who asserts that there was a modification to prove that the other party consented thereto. Leonard v. Schall, 132 Minn. 446, 157 N. W. 723, 4 A. L. R. 1166. It is not necessary to prove consent expressly given. It may be inferred from the conduct of the parties.

In the instant case was consent conclusively shown when it appeared that plaintiffs received and kept the riders and attached them to the policies? Plaintiffs may have been negligent in not reading

the riders and in failing to discover the change they purported to make in the terms of the original contract, but that alone would not prevent them from asserting that the policies as first written were still in effect. Norman v. Kelso F. M. F. Ins. Co. 114 Minn. 49, 130 N. W. 13; Haley v. Sharon Mut. Fire Ins. Co. 147 Minn. 190, 179 N. W. 895. The retention of the riders without objection was a circumstance from which the court might properly infer that the parties had agreed to a modification. It would be comparable to receiving and retaining for an unreasonable time a statement of account without objecting to it. Under some circumstances that is held to warrant the inference that the debtor consented to recognize it as an account stated. Western Newspaper Union v. Segerstrom Piano Mnfg. Co. 118 Minn. 230, 136 N. W. 752. It is also held that contractual assent may be expressed by accepting a paper containing the terms of the alleged contract. Ames v. N. Y. Life Ins. Co. 154 Minn. 111, 191 N. W. 274. When it appears that the insured received, retained and attached a rider to his policy, it may be inferred that he consented to any permissible change in the contract of insurance which the rider effected. The weight to be given to the inference will vary with the circumstances. They may be such as to require a court to regard it as conclusive. The general principles of law applicable to the modification of contracts will afford the best guide to a correct determination of each case. There can be no hard and fast rule.

In the case at bar, when the riders were handed to the insured, he inquired whether the insurance was all right. Instead of informing him that the riders modified the terms of the policies, the agent answered, "yes." Under the circumstances he should have explained the effect of the riders. His failure to do so bore on the question of the reality of consent to a modification of the contract. It deprived the act of the insured of the effect which would otherwise be given to it, and the trial court might properly take this into account in determining whether or not the insured should be deemed to have given his consent to a change in the policies. Taken as a whole, the evidence warranted the court in holding that the insured

had not consented to a modification of the original contract of insurance.

The order denying a new trial is therefore affirmed.